

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **EDICOTT IVY III, individual** <br> *Sheri Smith (friend of court)* <br>                 **Plaintiff,** <br><br> **vs.** <br><br> **ZEIGLER BMW OF ORLAND PARK;** <br> **BMW FINANCIAL SERVICES, NA,** <br> **LLC; BMW FS SECURITIES, LLC;** <br> **US BANK, NA; BMW VEHICLE** <br> **OWNER TRUST 2022-A; BMW** <br> **FINANCIAL SERVICES, NA, LLC** <br> **AND DOES 5-100 INCLUSIVE.** <br><br>            **Defendants.** <br> *Edicott M Ivy III* <br> *Sheri Smith (Friend of court)* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**CASE NO.:**

   23cv15318
   Judge Jenkins
   Magistrate Judge McShain
   Randomly Assigned CAT 2

# FILED

OCT 25 2023 JB

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## PLAINTIFF'S ORIGINAL PETITION/COMPLAINT

COMES NOW, Plaintiff, Edicott Ivy III, complaining of the above named defendants,

and in support thereof would show the Court:

## I. INTRODUCTION

1.    This case by Plaintiff, once a consumer debtor of Zeigler BMW of Orland Park,

brings this action for 1) unjust enrichment; 2) violation of the Fair Credit Extension

Uniformity Act ("FCEUA"); 3) violation of the Fair Debt Collection Practices Act

("FDCPA"); 4) Negligent and Intentional Infliction of Emotional Distress; 5)

Racketeering; 6) Declaratory Judgment; and 8) Equitable and Injunctive relief.

2.      At least since May 27, 2021, the Defendants have engaged in a scheme whereby

they issue Auto Loans to consumers and then seek to collect the amounts allegedly due

to them which are not legally due to them.

## II. PARTIES

3.      Plaintiff will need to propound discovery on Defendants to obtain further

information to determine the securitization parties involved in the instant transaction.

These parties will be added as DOES 1 to 100 when determined. Zeigler BMW of

Orland Park is corporation, and in the typical Securitization Scenario, Zeigler BMW of

Orland Park would sell the account to BMW Financial Services, NA, LLC after a

balance is created. BMW Financial Services, NA, LLC then sells the account to BMW

FS Securities, LLC who sells to US Bank, NA. US Bank, NA, then holds the loan as

trustee for the BMW Vehicle Owner Trust 2022-A , which was then buying Defendant

Zeigler BMW of Orland Park Corporate debt. BMW Financial Services, NA, LLC is

the Servicer of Plaintiff's Note and has attempted to collect on the alleged debt.

4.      The BMW Vehicle Owner Trust 2022-A then underwrites a bond offering. The

bonds are placed into tranches from senior debt to junior debt and each tranches has a

certain amount of assets. Defendant Zeigler BMW of Orland Park still services the

account by sending out bills and accepting payment. However, Defendant Zeigler BMW

of Orland Park  has given up ownership rights, as required under contract, to the BMW

Vehicle Owner Trust 2022-A; therefore Zeigler BMW of Orland Park and its affiliated

or successor entities have given up their rights to sue its cardholders when they default

on their debt because Zeigler BMW of Orland Park intentionally sold and relinquished

its beneficial interest in Zeigler BMW of Orland Park accounts. Despite this fact,

Zeigler BMW of Orland Park has continued to pursue, along with its affiliates and the

defendant law firms, collection lawsuits against Plaintiff to recover the obligations

allegedly owed on the Zeigler BMW of Orland Park accounts.

5.      Plaintiff continues to suffer monetary damages as a result of defendants' unlawful

and improper conduct including, but not limited to, making payments to defendants and

or incurring other costs related to the defense of defendants improper efforts to collect

relinquished debts from Plaintiff and the class.

### III. JURISDICTION AND VENUE

6.      Jurisdiction of this Court arises under FDCPA, 15 U.S.C. § 1692k (d), FCEUA,

73 P S §22709 28 U S C §1331 (federal question) and §1367(a) (supplemental

jurisdiction), Racketeering influenced and corrupt Organizations Act 18 section 1962

(hereinafter referred to as RICO). Venue is appropriate in this federal district, pursuant

to 28 U.S.C. § 1391, because events and omissions giving rise to Plaintiff's claims

occurred within this federal judicial district and because Defendants reside and/or

regularly transact business within this federal judicial district.

### IV. THE AUTO LOAN SECURITIZATION AND DEBT COLLECTION SCHEME

7.      At all times relevant hereto, Zeigler BMW of Orland Park's primary revenues

came from interest income on loan receivables, securitization income derived from the

transfer of auto loan receivables, securitization trusts, and subsequent issuance of

beneficial interests through securitization transactions (hereinafter referred to as "the securitization").

8.      In order to earn securitization income from the Auto Loan securitization, Zeigler BMW of Orland Park sold its Auto Loan receivables to the BMW Vehicle Owner Trust 2022-A.

9.      The Auto Loan securitization process is set forth in the amended and restated Pooling and Servicing Agreement ("PSA") between Zeigler BMW of Orland Park, as seller, and the BMW Vehicle Owner Trust 2022-A- trustee.  A copy of the relevant portions of the PSA is attached hereto, incorporated herein and marked as **EXHIBIT "A"**.

## V. THE Edicott Ivy III COLLECTION MATTER ALLEGATIONS

10.     Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein,

11.     On 08/25/2023, Zeigler BMW of Orland Park (or an assignee of Zeigler BMW of Orland Park) commenced a collection lawsuit against Plaintiff by filing the civil action complaint which is attached hereto as **EXHIBIT "B".** An agent acting on behalf of Zeigler BMW of Orland Park, in his individual capacity, verified in the Affidavit of Claim, the accuracy of the collection matter Complaint.

12.     Also, Plaintiff has continuously received account statements from Zeigler BMW of Orland Park, on Zeigler BMW of Orland Park letterhead, and Plaintiff has always believed at the relevant times described in this petition that Zeigler BMW of Orland

Park was the beneficial interest holder of the debt, but upon learning of the probable securitization of his Auto Loans, as alleged herein, Plaintiff no longer believes that is the case.

## VI. COUNT ONE – UNJUST ENRICHMENT

13.     Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

14.     Pursuant to the Pooling and Servicing Agreement, Zeigler BMW of Orland Park surrendered its right to collect by lawsuit on the obligation of the Zeigler BMW of Orland Park Auto Loan account. As set forth above, by way Plaintiff said payments to Zeigler BMW of Orland Park, benefits were conferred on Zeigler BMW of Orland Park, After Plaintiff's account was securitized, Zeigler BMW of Orland Park continued accepting payments. Additionally, Zeigler BMW of Orland Park collected money from unlawful lawsuits it filed by selling accounts to collection firms and by filing lawsuits in its own name.

15.     Zeigler BMW of Orland Park accepted, appreciated and has retained such benefits. Under such circumstances described above, it would be inequitable for Zeigler BMW of Orland Park to retain such benefits without payment of value. The conduct of Zeigler BMW of Orland Park was done willfully and in reckless disregard for the rights of Plaintiff thereby making the award of punitive damages just and appropriate.

16.     WHEREFORE, Plaintiff, Edicott Ivy III demands compensatory and punitive damages against the Zeigler BMW of Orland Park, and the other defendants, both jointly

and severally, in an amount in excess of $150,000.00, plus court costs, counsel fees, and such other relief as this.

## VII. COUNT TWO - VIOLATION OF THE FAIR CREDIT EXTENSION UNIFORMITY ACT (FCEUA), 73, P.S. §§ 2270.1 - 2210.6 AGAINST Zeigler BMW of Orland Park

17.     Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

18.     The alleged Auto Loan account obligation was a debt within the meaning of the FCEUA, 73 P.S. § 2270.3 Because he was allegedly obligated to pay the Auto Loan account debt, Plaintiff is a "consumer" within the meaning of the FCEUA 73 P.S. § 2270.3 Because the Auto Loan account debt was alleged to be owed to it, Zeigler BMW of Orland Park is a "creditor" within the meaning of the FCEUA 73 P S § 2270.3.

19.     Zeigler BMW of Orland Park violated the FCEUA by using false, deceptive, and/or misleading representations and/or means in connection with the collection of a debt. FCEUA 73 P.S. § 2270.3

20.     Zeigler BMW of Orland Park violated the FCEUA by falsely representing the character, amount, and/or legal status of a debt. 73 P.S. § 2270.4(b)(5)(ii).  Zeigler BMW of Orland Park violated the FCEUA by attempting to collect an amount (including interest, fees, and charges) not expressly authorized by any agreement creating the debt or permitted by law. 73 P.S. § 2270.4(b)(6)(I).

21.     Pursuant to FCEUA, 73 P.S. §2270.5(a), if a creditor engages in an unfair or deceptive debt collection act or practice under FCEUA, it shall constitute a violation.

22.     WHEREFORE, Plaintiff respectfully request that the Court enter judgment in their favor and against all defendants for:

(a)     Actual damages, including but not limited to costs and attorney's fees to defend the collection matter;

(b)     Treble damages;

(e)     Costs and reasonable attorney fees; and

(d)     Such other and further relief as may be just and proper.

## VIII. COUNT THREE - VIOLATIONS OF FAIR DEBT COLLECTION PRACTICES ACT (FDCPA), 15 U.S.C. §§ 1692 -1692p, AGAINST ALL DEFENDANTS

23.     Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

24.     Each Zeigler BMW of Orland Park account obligation was a "debt" within the meaning of FDCPA, 15U.S.C. § 1692a(5).  Because they were allegedly obligated to pay the Zeigler BMW of Orland Park account obligation, Plaintiff was a "consumer" within the meaning of FDCPA, 15 U S C § 1692a(3). The BMW Vehicle Owner Trust 2022-A bought or was assigned Zeigler BMW of Orland Park debt. Since Zeigler BMW of Orland Park no longer owned the securitized debt it had previously written off, there was nothing for Zeigler BMW of Orland Park to sell or to be assigned.

25.     Each of said defendants, at times relevant hereto, was a person who used an instrumentality of interstate commerce or the mails in a business the principal purpose of which was the collection of debts, who regularly collected or attempted to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Based

7

on said activity or activities, each of said Defendants was a debt collector within the meaning of FDCPA, 15 U.S.C. § 1692.

26.     Zeigler BMW of Orland Park and the BMW Vehicle Owner Trust 2022-A , as the purported assignee of Zeigler BMW of Orland Park, violated FDCPA by using false, deceptive, and/or misleading representations and/or means in connection with the collection of the Zeigler BMW of Orland Park account obligation, 5 U.S.0 § 1692(e).

27.     Said defendants violated FDCPA by falsely representing the character, amount, and/or legal status of the Zeigler BMW of Orland Park account obligation. 15 U.S.C. § 16923(2)(A),

28.     Said defendants violated FDCPA by using a false representation or deceptive means to attempt to collect the Zeigler BMW of Orland Park account obligation. 15 U.S.C. 1692e(i0).

29.     Said defendants violated FDCPA by attempting to collect an amount (including interest, fees and charges) not expressly authorized by any agreement creating the Zeigler BMW of Orland Park account obligation or permitted by law, 15 U.S.C. § 192f(1).

30.     WHEREFORE, Plaintiff requests that the Court enter judgment in their favor and against said defendants, pursuant to FDCPA, 15 U.S.C. § 1602k(a), as follows:

(a)     Actual damages, including, but not limited to, costs and attorney's fees to defend the collection matter.

(b)     From each said defendant, statutory damages of $1,000.00 for each named Plaintiff and, an amount not to exceed the lesser of $500,000.00 or 1% of the net worth

of such defendant; and

(c)     Costs of this action and reasonable attorney fees.

## IX. COUNT FOUR – INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

31.     Plaintiff and the Class incorporate by reference the foregoing paragraphs as though fully set forth herein.

32.     Pursuant to the PSA, Zeigler BMW of Orland Park surrendered its right to collect on the obligation of the Plaintiff when Zeigler BMW of Orland Park accepted, appreciated, and retained such benefits of selling the note to DEPOSITOR (DOE 2), which in turn sold the note to the BMW Vehicle Owner Trust 2022-A.

33.     This collection scheme caused the Plaintiff emotional distress. The conduct of Zeigler BMW of Orland Park was done negligently AND/OR intentionally and in disregard for the rights of Plaintiff thereby making the award of punitive damages just and appropriate.

34.     WHEREFORE, Plaintiff demands compensatory and punitive damages against the Zeigler BMW of Orland Park, and the other defendants, both jointly and severally, in an amount in excess of:

a. $150,000.00, plus court costs, counsel fees and such other relief as this Honorable Court deems appropriate.

## X. COUNT FIVE - RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS 18 USC section 1962

35.     Plaintiff incorporates and adopts the foregoing paragraphs of the complaint

36.     Plaintiff is a natural person and as such a person is within the meaning of 18 USC section 1963(3)

37.     Defendants-are corporate entities and as such are persons within the meaning of 18 USC section 1961(3)

THE ENTERPRISE

38.     Zeigler BMW of Orland Park, BMW FS Securities, LLC and the BMW Vehicle Owner Trust 2022-A and John Does 1 through 100, comprise three distinct groups of people that together form an enterprise within the meaning of 18 USC section 1961(4). Each and every individual is associated with the enterprise.

39.     The enterprise for more than three years has been engaged in activities that affect interstate commerce and remains continuous and open ended.

PATTERN OF RACKETEERING AND MAIL FRAUD

40.     Defendants have devised a scheme to defraud and obtain money by means of fraudulent pretenses by selling or assigning a debt that they no longer owned to the BMW Vehicle Owner Trust 2022-A and then misrepresenting its ownership of the debt while still collecting on such debts in its own name without actual ownership.

41.     Defendants have engaged In at least two acts of racketeering activity in interstate commerce through a pattern of racketeering activity including but not limited to mail fraud and bank fraud In violation of 18 USC section 1341, 1343 and 1344 to support a fraudulent scheme.

42.     Each of the uses of the mails and wires in connection with the defendants actions as herein described, which constitutes a separate act of mail and wire fraud and Is thus a predicate act which constitutes a pattern of racketeering activity.

43.     Each defendant agreed and conspired to engage in this illegal conduct. Plaintiff and the class has been forced and threatened to pay debts they did not owe constituting an injury to property within the meaning of 18 USC 1962 by actions of defendants and their cc conspirators In violation of 18 USC section 1962(c) and (d).

## XI. COUNT SEVEN - DECLARATORY AND INJUNCTIVE RELIEF AGAINST ALL DEFENDANTS

44.     Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein,

45.     An actual case and substantial controversy exists between Plaintiff and the defendants with respect to their unfair or deceptive acts or practices and misleading misrepresentatives and non-disclosure of material facts relating to their debt collection practices.

46.     Defendants' conduct directly and proximately caused Plaintiff significant damages. Defendants contend to the contrary. Therefore, the parties herein have adverse legal interests of sufficient immediacy and reality to warrant the issuance of declaratory relief. Plaintiff, on behalf of himself and all others similarly situated, is entitled to adjudication declaring defendants' practice of perpetrating unfair or deceptive acts and misleading misrepresentations and non-disclosure of material facts

47.    Defendants continue their deceptive and misleading debt collection practices, and, therefore, defendants should be prohibited and enjoined from engaging in these practices in the future.

48.    WHEREFORE, Plaintiff requests that this Court enter judgment in his favor and against all defendants as follows:

(a)    A declaration that Zeigler BMW of Orland Park, or any purported assignee of the note other than the BMW Vehicle Owner Trust 2022-A, is not the proper Plaintiff to                                sue                                to collect receivables that it has securitized, and by doing so, it and its counsel, the legal defendants, violates Fair Debt Collection Practices Act (FDCPA), and the RICO ACT.

(b)    An Order enjoining Zeigler BMW of Orland Park, during the pendency of this action and permanently thereafter, from suing any class members to collect receivables that Zeigler BMW of Orland Park has securitized, prosecuting or maintaining such a collection proceeding, and/or otherwise representing to a current or former consumer account holder that it remained the creditor.

## XII. REQUEST FOR RELIEF

WHEREFORE, Plaintiff, Edicott Ivy III, respectfully requests this Court, after jury trial on the merits, award damages as requested above, and for such other relief as Plaintiff may show himself entitled.


_____

Edicott Ivy III, Pro se

Exhibit A

# *BLOOMBERG AUTO LOAN ANALYSIS REPORT*[TM]

*Prepared for:*

*EDICOTT IVY III*

*For Goods Described as:*

*New 2021 BMW M850X1 GC VIN# WBAGV8C00MCF18883*

*Prepared on:*

*September 08. 2023*

# SECTION 1:   TRANSACTION DETAILS

| BUYER | |
|---|---|
| EDICOTT IVY III | |
| **BUYER ADDRESS** | **DESCRIPTION OF GOODS** |
| 1601 BAILEY ROAD, NAPERVILLE, IL 60505 | NEW 2021 BMW M850X1 GC VIN# WBAGV8C00MCF18883 |

## TRANSACTION PARTICIPANTS

| AMOUNT FINANCED | SERVICER | SELLER |
|---|---|---|
| $104,005.27 | BMW FINANCIAL SERVICES NA, LLC | ZEIGLER BMW OF ORLAND PARK<br><br>11030 West 159th Street, Orland Park, IL 60467 |
| **SELLER/ORIGINATOR** | **AGREEMENT TYPE** | **CASH PRICE** |
| ZEIGLER BMW OF ORLAND PARK | 72 Payments 5.90% APR Motor Vehicle Retail Installment Contract | 1)Cash Price with Sales Tax: Seller/Documents = $121,682.08 2)Less Trade-In, Cash Down Payment          $18,002.81 Total Amount Financed: $104,005.27 |

**COPY OF AGREEMENT PROVIDED BY THE BUYER**

## MOTOR VEHICLE RETAIL INSTALLMENT CONTRACT - Illinois
## BMW Financial Services NA, LLC

DEAL#: 44136
CUST#: 111309

### 1. PARTIES

**BUYER(S)**
Name EDICOTT IVY III
Address (include County and Zip Code)
1601 BAILEY RD
NAPERVILLE IL 60505
KANE
Billing Address (if different)
N/A

**SELLER**
Name ZEIGLER BMW OF ORLAND PARK
Address 11030 West 159th Street
ORLAND PARK
IL
60467

DATE OF CONTRACT 05/27/2021

This Motor Vehicle Retail Installment Contract ("Contract") is entered into between the buyer(s) ("Buyer") and the seller. "Seller" (named above. Unless otherwise specified or required by context, "I", "me" and "my" refer to the Buyer and "you" and "your" refer to the Seller or Seller's assignee. "Vehicle" refers to the vehicle described below. I promise to pay the Seller the Amount Financed plus the Finance Charge calculated at the Annual Percentage Rate shown below according to the Payment Schedule shown below. I acknowledge that I am purchasing the Vehicle from the Seller on an installment basis and accept the Vehicle in its present condition, including all its equipment, parts and accessories.

### 2. VEHICLE

| ☒ New ☐ Used | Year | Make | Model | Vehicle Identification Number | Odometer Reading | ☒ Personal Use ☐ Business Use ☐ Agricultural Use |
|---|---|---|---|---|---|---|
| | 2021 | BMW | M850XI GC | WBAGV8C00MCF18883 | 1880 | |

☐ CD Player      ☐      N/A      (specify)   ☐      N/A      (specify)   ☐      N/A      (specify)

### 3. CREDIT DISCLOSURES

e=estimate

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | Amount Financed The amount of credit provided to me or on my behalf. | Total of Payments The amount I will have paid after I have made all payments as scheduled. | Total Sale Price The total cost of my purchase on credit, including my down payment of $ _____ 18002.81 |
|---|---|---|---|---|
| 5.90 % | $ 20044.97 e | $ 104005.27 | $ 124050.24 e | $ 142053.05 e |

**PAYMENT SCHEDULE**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 1722.92 | Monthly, beginning 07/11/2021 |
| 1 Balloon Payment (if applicable) N/A | N/A | N/A |

**SECURITY.** I am giving a security interest in the Vehicle.
**LATE CHARGE.** If all or any portion of a payment is more than 10 days late, I will be charged (a) $10 on any scheduled payment of $200 or less or (b) 5% of any scheduled payment of more than $200.
**PREPAYMENT.** If I pay off early, I will not have to pay a penalty.

Please read all pages of this Contract for additional information on security interests, nonpayment, default, and the right to require repayment in full before the scheduled maturity date.

### ILLINOIS NOTICE REGARDING USED VEHICLES

The following applies only if the Vehicle is a used vehicle and the Vehicle is not an antique vehicle, as defined in the Illinois Vehicle Code, or a collector motor vehicle.

*Illinois law requires that this Vehicle will be free of a defect in a power train component for 15 days or 500 miles after delivery, whichever is earlier, except with regard to particular defects disclosed on the first page of this agreement. "Power train component" means the engine block, head, all internal engine parts, oil pan and gaskets, water pump, intake manifold, transmission, and all internal transmission parts, torque converter, drive shaft, universal joints, rear axle and all rear axle internal parts, and rear wheel bearings. You (the consumer) will have to pay up to $100 for each of the first 2 repairs if the warranty is violated.*

Attention consumer: sign here only if the Seller has told you that this Vehicle has the following problem or problems and you agree to buy the Vehicle on those terms:

1. N/A _____   X _____   N/A _____
Buyer's Signature                 Date

2. N/A _____   X _____   N/A _____
Buyer's Signature                 Date

3. N/A _____

1314L (01/20) (IL)       78748*1*ZBO-FI       05/26/2021  10:03 pm   1 of 6

Page | 3

## 4. BALLOON PAYMENT

**BALLOON PAYMENT.** If a Balloon Payment is noted above in Section 3, this Section 4 and Section 10 below apply. I understand that the scheduled Balloon Payment is substantially larger than each of the other scheduled payments. The due date and amount of the scheduled Balloon Payment are shown in the Payment Schedule in Section 3 above. If I choose and qualify for the Sale Option explained in Section 10 of this Contract, I agree that I may incur the following fees: (A) a Disposition Fee of $ _____ N/A _____ ; (B) Excess Mileage Fees of _____ N/A _____ ¢ for each mile driven in excess of _____ N/A _____ miles per year; and (C) the Excess Wear and Use Charge explained in Section 10.

## 5. ITEMIZATION OF THE AMOUNT FINANCED

**A. CASH PRICE**

| | | |
|---|---|---|
| (1) Cash Price of Vehicle and Accessories | $ | 112865.00 |
| (2) Sales Tax | + | 8513.48 |
| (3) Other (Describe) SELLER/DOC | + | 303.60 |
| (4) Other (Describe) N/A | + | N/A |
| (5) Other (Describe) N/A | + | N/A |
| (6) Total Cash Price | = | 121682.08 |

**B. DOWN PAYMENT**

(1) Net Value of Trade-In
(Gross Allowance $ 34500.00 Payoff $ 31997.19)
(Year 2019 Make DODGE Model DURANGO)   $ 2502.81
(2) Cash Down Payment   + 12500.00
(3) Manufacturer's Rebate Assigned to Seller   + 3000.00
(4) Other (Describe) N/A   + N/A
(5) Total Down Payment   = 18002.81

**C. UNPAID BALANCE OF CASH PRICE**
(A(6) minus B(5))   $ 103679.27

*Seller and/or Seller's affiliates may retain or receive a portion of these amounts.

THE SELLER MAY ASSIGN THIS CONTRACT AND RECEIVE A FEE OR OTHER CONSIDERATION FOR FACILITATING THIS FINANCING.

**D. AMOUNTS PAID TO OTHERS ON MY BEHALF**

| | | |
|---|---|---|
| (1) To Public Officials: | | |
| (a) License, Title, and Registration Fees | $ | 326.00 |
| (b) Other Official Fees (Describe) ___ N/A | + | N/A |
| (2) To Insurance Companies For: | | |
| (a) Credit Life/Disability Insurance | + | N/A * |
| (b) Other Insurance (Describe) N/A | + | N/A * |
| (3) Other Charges: | | |
| (a) To N/A For N/A | + | 0.00 * |
| (b) To N/A For N/A | + | N/A * |
| (c) To N/A For N/A | + | N/A * |
| (d) To N/A For N/A | + | N/A * |
| (e) To N/A For N/A | + | N/A * |
| (f) To N/A For N/A | + | N/A * |
| (g) To N/A For N/A | + | N/A * |
| (h) To N/A For N/A | + | N/A * |
| (4) Total Amounts Paid to Others on My Behalf | + | 326.00 |

**E. AMOUNT FINANCED (C plus D(4))**   $ 104005.27

## 6. SERVICE CONTRACT

**A service contract is not required to obtain credit and will not be provided unless I sign and agree to pay the cost.** The service contract issued by the Provider will describe the terms and conditions in further detail. By signing below, I agree to purchase the service contract for the term and cost indicated.

Provider: N/A         Cost: $ _____ N/A  Term: N/A _____ months or N/A _____ miles, whichever occurs first.
Provider: N/A         Cost: $ _____ N/A  Term: N/A _____ months or N/A _____ miles, whichever occurs first.
Provider: N/A         Cost: $ _____ N/A  Term: N/A _____ months or N/A _____ miles, whichever occurs first.
Provider: N/A         Cost: $ _____ N/A  Term: N/A _____ months or N/A _____ miles, whichever occurs first.
Provider: N/A         Cost: $ _____ N/A  Term: N/A _____ months or N/A _____ miles, whichever occurs first.

X _____ N/A _____                    X _____ N/A _____
Buyer's Signature                         Buyer's Signature

## 7. CREDIT INSURANCE

**Credit life or credit disability insurance is not required to obtain credit and will not be provided unless I sign and agree to pay the premium.** My decision to obtain (or not obtain) credit insurance is not a factor in granting credit and does not affect your credit decision. I may also use alternative coverage or buy insurance elsewhere. The policies or certificates issued by the insurer will describe the terms and conditions in further detail. By signing below, I agree to pay for the following insurance for the terms and premiums indicated.

☐ I want Credit Life Insurance (One Buyer only)   Term N/A mos.  Premium $ _____ N/A  Insured Name: N/A

☐ I want Joint Credit Life Insurance   Term N/A mos.  Premium $ _____ N/A  Insured Name: N/A

Insured Name: N/A

☐ I want Credit Disability Insurance (One Buyer only)   Term N/A mos.  Premium $ _____ N/A  Insured Name: N/A

Name of Insurer(s): N/A

X _____ N/A _____   Date _____         X _____ N/A _____   Date _____
Buyer's Signature                              Buyer's Signature

3314L (01/20) (IL)                    78748*1*ZBO-FI                    05/26/2021  10:03 pm

2 of 6

## Contract Agreement is Assigned to BMW Financial Services NA, LLC

in Section 1 of this Contract and applicable federal law.

Notwithstanding any other provision for notice contained in this Contract, any arbitration Claim or other notice provided under the rules of the arbitration administrator will be given to you at the following address: If my Claim is against the Seller, I agree that notice of my Claim will be given to the Seller at the address specified in Section 1 of this Contract. If my Claim is against the Assignee (designated in Section 20 of this Contract), I agree that notice of my Claim will be given at 5550 Britton Parkway, Hilliard, OH 43026. If my Claim is against both the Seller and the Assignee, I agree that both the Seller and the Assignee will be notified of my Claim at the addresses indicated herein.

### 21. OTHER NOTICES TO BUYER

**DOCUMENTARY FEE.** A DOCUMENTARY FEE IS NOT AN OFFICIAL FEE. A DOCUMENTARY FEE IS NOT REQUIRED BY LAW, BUT MAY BE CHARGED TO BUYERS FOR HANDLING DOCUMENTS AND PERFORMING SERVICES RELATED TO CLOSING OF A SALE. THE BASE DOCUMENTARY FEE BEGINNING JANUARY 1, 2020, WAS $300. THE MAXIMUM AMOUNT THAT MAY BE CHARGED FOR A DOCUMENTARY FEE IS THE BASE DOCUMENTARY FEE OF $300 WHICH SHALL BE SUBJECT TO AN ANNUAL RATE ADJUSTMENT EQUAL TO THE PERCENTAGE OF CHANGE IN THE BUREAU OF LABOR STATISTICS CONSUMER PRICE INDEX. THIS NOTICE IS REQUIRED BY LAW.

NOTICE OF POSSIBLE REFUND OF CREDIT LIFE OR DISABILITY INSURANCE PREMIUM

1. IF YOU HAVE PURCHASED EITHER CREDIT LIFE OR CREDIT DISABILITY INSURANCE, OR BOTH, TO GUARANTEE PAYMENTS BEING MADE IN CASE OF YOUR DEATH OR DISABILITY, ON YOUR VEHICLE PURCHASED UNDER AN INSTALLMENT SALES CONTRACT, YOU MAY BE ENTITLED TO A PARTIAL REFUND OF YOUR PREMIUM IF YOU PAY OFF YOUR INSTALLMENT LOAN EARLY.

2. IN CASE OF EARLY COMPLETE PAYMENT OF YOUR LOAN, YOU SHOULD CONTACT THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE TO SEE IF A REFUND IS DUE. IF YOUR VEHICLE DEALER FINANCED YOUR LOAN, THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE IS YOUR VEHICLE DEALER.

### 19. BUYER NOTICES AND CONTRACT SIGNATURES

**IMPORTANT: READ THE ADDITIONAL TERMS ON ALL PAGES BEFORE SIGNING BELOW.**

**Notice to the Buyer: 1. Do not sign this agreement before you read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the agreement you sign. 3. Under the law you have the right, among others, to pay in advance the full amount due and to obtain under certain conditions a partial refund of the finance charge.**

By signing below, I agree to all the terms of this Contract. I also acknowledge and agree to the Arbitration Clause in Section 18 of this Contract.

**I ACKNOWLEDGE RECEIPT OF A COMPLETELY FILLED-IN COPY OF THIS CONTRACT AT THE TIME OF SIGNING.**

### RETAIL INSTALLMENT CONTRACT

Buyer's Signature: X

Guarantor's Signature: X

I hereby guarantee the collection of the above described amount upon failure of the Seller named herein to collect said amount from the Buyer named herein.

Co-Buyer's Signature: X **N/A**

Instruction: If the co-signer is the Buyer's parent, Buyer's spouse, a person listed on the certificate of title as an owner of the Vehicle, or will actually receive the Vehicle, sign above. Other co-signers sign on the Guarantor's Signature line.

### 20. SELLER SIGNATURE

The authorized signature of the Seller has the effect of: (1) acknowledging that no representations or warranties beyond those presented in this Contract have been made; (2) confirming that no written or oral representations have been made by or to the Buyer that can be used as a defense to this Contract; (3) accepting the terms and conditions of this Contract; (4) acknowledging verification of the existence of the insurance coverage required by this Contract with the Buyer's insurance agent; (5) assigning this Contract to BMW Bank of North America, a wholly owned subsidiary of BMW Financial Services NA, LLC (collectively, "Assignee"), 5550 Britton Parkway, Hilliard, Ohio 43026; and (6) acknowledging that the Center Agreement in place with Assignee governs this transaction. The Seller shall not be an agent of the Assignee for any purpose.

Authorized Signature: **X**

Title: **FIMANAGER**

# SECTION 2: SECURITISATION PARTICIPANTS

| SELLER/ORIGINATOR | SPONSOR/SELLER | DEPOSITOR |
|---|---|---|
| ZEIGLER BMW OF ORLAND PARK | BMW FINANCIAL SERVICES NA, LLC [1] | BMW FS SECURITIES LLC |
| **ISSUING ENTITY** | **NOTE TRUSTEE/ SECURITY TRUSTEE** | **SERVICER** |
| BMW VEHICLE OWNER TRUST 2022-A | U.S. BANK NATIONAL ASSOCIATION | BMW FINANCIAL SERVICES NA, LLC [1] |
| **PAYING AGENT (role includes holding of Transaction Documents)** | **CLOSING DATE** | **MATURITY DATE** |
| U.S. BANK NATIONAL ASSOCIATION | MAY 18, 2022 | DECEMBER 26. 2024 |

**[1] BMW Bank of North America**

BMW Bank is also a seller (in that capacity, also a "**Seller**") and an originator (in that capacity, also an "**Originator**") of the Receivables sold by it to the Depositor under the Bank Receivables Purchase Agreement. The national executive headquarters of BMW Bank are located at 2735 East Parleys Way, Suite 301, Salt Lake City, Utah 84109. Its telephone number is (801) 461-6500. Its Customer Service Center is located at c/o BMW Financial Services NA, LLC, 5550 Britton Parkway, Hilliard, Ohio 43026.

**BMW Vehicle Owner Trust 2022-A**
**Issuing Entity**
**(CIK Number: 0001921318)**

**BMW FS Securities LLC**
**Depositor**
**(CIK Number: 0001136586)**

**BMW Financial Services NA, LLC**
**Sponsor, Originator, Seller, Servicer and Administrator**
**(CIK Number: 0001541188)**

**BMW Bank of North America**
**Originator and Seller**

**$1,500,000,000 ASSET-BACKED NOTES**

**Summary of Terms**

The following summary contains a brief description of the terms of the offering of the notes. You will find a more detailed description following this summary. You should carefully read and consider this entire document, including any documents incorporated by reference herein to understand all of the terms of the offering of the notes before making your investment decision.

RELEVANT PARTIES

**Issuing Entity**

BMW Vehicle Owner Trust 2022-A, which we refer to as the "issuing entity," is a Delaware statutory trust. The issuing entity will be established by the trust agreement.

**Depositor**

BMW FS Securities LLC. The depositor's address and phone number are 300 Chestnut Ridge Road, Woodcliff Lake, New Jersey 07677 and (201) 307-4000.

**Sponsor, Originator, Seller, Servicer and Administrator**

BMW Financial Services NA, LLC, which we refer to as "BMW FS." The sponsor's address and phone number are 300 Chestnut Ridge Road, Woodcliff Lake, New Jersey 07677 and (201) 307-4000.

**Seller and Originator**

BMW Bank of North America, a wholly owned subsidiary of BMW FS, which we refer to as "BMW Bank." BMW Bank will also be a seller and originator of receivables.

**Indenture Trustee**

U.S. Bank Trust Company, National Association.

**Securities Intermediary**

U.S. Bank National Association.

**Owner Trustee**

Wilmington Trust, National Association.

**Asset Representations Reviewer**

Clayton Fixed Income Services LLC.

**RELEVANT AGREEMENTS**

**Indenture**

The indenture between the issuing entity and the indenture trustee. The indenture provides for the terms of the notes.

**Trust Agreement**

The trust agreement, as amended and restated, between the depositor and the owner trustee. The trust agreement governs the creation of the issuing entity and provides for the terms of the certificates.

**Sale and Servicing Agreement**

The sale and servicing agreement among the issuing entity, the indenture trustee, the securities intermediary, the servicer and the depositor. The sale and servicing agreement governs the transfer of the receivables by the depositor to the issuing entity and the servicing of the receivables by the servicer.

**Administration Agreement**

The administration agreement among the administrator, the issuing entity and the indenture trustee. The administration agreement governs the provision of reports by the administrator and the performance by the administrator of other administrative duties for the issuing entity.

**Receivables Purchase Agreement**

The receivables purchase agreement between the depositor and BMW FS. The receivables purchase agreement governs the sale of the applicable receivables from BMW FS to the depositor.

**Bank Receivables Purchase Agreement**

The receivables purchase agreement between the depositor and BMW Bank. The bank receivables purchase agreement governs the sale of the applicable receivables from BMW Bank to the depositor.

**Asset Representations Review Agreement**

The asset representations review agreement among the asset representations reviewer, the servicer and the issuing entity, which provides for the review, in certain circumstances, of certain representations made by the sellers with respect to the receivables.

RELEVANT DATES

**Closing Date**

Expected to be on or about May 18, 2022.

**Cutoff Date**

The cutoff date for the pool of receivables described in this prospectus is the close of business on March 31, 2022. The issuing entity will be entitled to all collections in respect of the receivables received after the cutoff date.

## DESCRIPTION OF THE ASSETS OF THE ISSUING ENTITY

The issuing entity's main source of funds for making payments on the notes will be collections on motor vehicle retail installment sale contracts, known as the receivables. All of the receivables are secured by passenger cars, light trucks and motorcycles manufactured by Bayerische Motoren Werke Aktiengesellschaft, which we refer to as "BMW AG," or its subsidiaries.

The statistical information presented in this prospectus relates to a pool of receivables as of the cutoff date. As of the cutoff date, the receivables had the following characteristics:

• aggregate principal balance: $1,652,928,130.30

• number of receivables: 54,064

• average principal balance: $30,573.54

• weighted average annual percentage rate: 2.81%

• weighted average original term to maturity: 63.93 months

• weighted average remaining term to maturity: 49.93 months

### Removal of Pool Assets

**Breaches of Representations and Warranties.** Upon sale to the depositor, each seller will make certain representations and warranties to the depositor, and upon sale to the issuing entity, the depositor will make certain representations and warranties to the issuing entity. The depositor will also assign all of its rights under the receivables purchase agreement and the bank receivables purchase agreement to the issuing entity. The sellers are required to repurchase from the issuing entity any receivable for which certain representations or warranties of such seller with respect to that receivable have been breached if any such breach materially and adversely affects the interests of the issuing entity or the noteholders in such receivable and such breach has not been timely cured.

***Breach of Servicer Covenants***. The servicer will be required to purchase any receivable materially and adversely affected by breaches of certain of the servicer's covenants under the sale and servicing agreement to the extent such breach is not timely cured and materially and adversely affects the interests of the issuing entity or the noteholders in any receivable.



**Summary of Transaction**

This chart provides only a simplified overview of the relations between the key parties to the transaction. Refer to this prospectus for a further description.

Each underwriter has represented and agreed, severally and not jointly that:

(a) it has only communicated or caused to be communicated and will only communicate or cause to be communicated an invitation or inducement to engage in investment activity (within the meaning of Section 21 of the Financial Services and Markets Act 2000, as amended (the "FSMA")) received by it in connection with the issue or sale of the Notes in circumstances in which Section 21(1) of the FSMA does not apply to the Issuing Entity; and

(b) it has complied and will comply with all applicable provisions of the FSMA with respect to anything done by it in relation to the Notes in, from or otherwise involving the United Kingdom (the "UK").

Each underwriter has also represented and agreed, severally and not jointly that it has not offered, sold or otherwise made available and will not offer, sell or otherwise make available any Notes to any UK retail investor in the UK. For these purposes:

(a) the expression "UK retail investor" means a person who is one (or more) of the following:

(i) a retail client, as defined in point (8) of Article 2 of Commission Delegated Regulation (EU) 2017/565 as it forms part of the domestic law of the UK by virtue of the EUWA and as amended; or

(ii) a customer within the meaning of the provisions of the FSMA and any rules or regulations made under the FSMA (such rules and regulations as amended) to implement Directive (EU) 2016/97 (as amended), where that customer would not qualify as a professional client, as defined in point (8) of Article 2(1) of Regulation (EU) No 600/2014 as it forms part of the domestic law of the UK by virtue of the EUWA and as amended; or

(iii) not a qualified investor, as defined in Article 2 of Regulation (EU) 2017/1129 (as amended) as it forms part of the domestic law of the UK by virtue of the EUWA and as amended; and

(b) the expression "offer" includes the communication in any form and by any means of sufficient information on the terms of the offer and the Notes to be offered so as to enable an investor to decide to purchase or subscribe for the Notes.

**Requirements for Certain European and United Kingdom Regulated Investors and Affiliates**

Regulation (EU) 2017/2402 of the European Parliament and of the Council of December 12, 2017 (as amended, the "**EU Securitization Regulation**") has direct effect in member states of the EU and is expected to be implemented by national legislation in other countries in the EEA.

Article 5 of the EU Securitization Regulation places certain conditions on investments in a "securitisation" (as defined in that regulation) (the "**EU Due Diligence Requirements**") by an "institutional investor", defined to include (a) a credit institution or an investment firm as defined in and for purposes of Regulation (EU) No 575/2013, as amended, known as the Capital Requirements Regulation (the "**EU CRR**"), (b) an insurance undertaking or a reinsurance undertaking as defined in Directive 2009/138/EC, as amended, known as Solvency II, (c) an alternative investment fund manager as defined in Directive 2011/61/EU that manages and/or markets alternative investment funds in the EU, (d) an undertaking for collective investment in transferable securities ("**UCITS**") management company, as defined in Directive 2009/65/EC, as amended, known as the UCITS Directive, or an internally managed UCITS, which is an investment company that is authorized in accordance with that Directive and has not designated such a management company for its management, and (e) with certain exceptions, an institution for occupational retirement provision falling within the scope of Directive (EU) 2016/2341, or an investment manager or an authorized entity appointed by such an institution for occupational retirement provision as provided in that Directive. Pursuant to Article 14 of the EU CRR, the EU Due Diligence Requirements also apply to investments by certain consolidated affiliates, wherever established or located, of institutions regulated under the EU CRR (such affiliates, together with all institutional investors referred to in the preceding sentence, "**EU Affected Investors**").

Relevant UK-established or UK-regulated persons are subject to the restrictions and obligations of Regulation (EU) 2017/2402 as retained under the domestic laws of the UK as "retained EU law", by operation of the EUWA and as amended by the Securitisation (Amendment) (EU Exit) Regulations 2019 (and as may be further amended, supplemented or replaced, from time to time) (the "**UK Securitization Regulation**", and together with the EU Securitization Regulation, the "**Securitization Regulations**").

Article 5 of the UK Securitization Regulation places certain conditions on investments in a "securitisation" (as defined in the UK Securitization Regulation ) (the "**UK Due Diligence Requirements**" and, together with the EU Due Diligence Requirements, the "**Due Diligence Requirements**" (and references in this prospectus to "the applicable Due Diligence Requirements" shall mean such Due Diligence Requirements to which a particular Affected Investor is subject)) by an "institutional investor", defined to include (a) an insurance undertaking as defined in section 417(1) of the FSMA; (b) a reinsurance undertaking as defined in section 417(1) of the FSMA; (c) an occupational pension scheme as defined in section 1(1) of the Pension Schemes Act 1993 that has its main administration in the UK, or a fund manager of such a scheme appointed under section 34(2) of the Pensions Act 1995 that, in respect of activity undertaken pursuant to that appointment, is authorised for the purposes of section 31 of the FSMA; (d) an AIFM as defined in regulation 4(1) of the Alternative Investment Fund Managers Regulations 2013 which markets or manages AIFs (as defined in regulation 3 of those Regulations) in the UK; (e) a management company as defined in section 237(2) of the FSMA; (f) a UCITS as defined by section 236A of the FSMA, which is an authorized open ended investment company as defined in section 237(3) of the FSMA; (g) a CRR firm as defined by Article 4(1)(2A) of Regulation (EU) No 575/2013, as it forms part of UK domestic law by virtue of the EUWA and as amended (the "**UK CRR**"); and (h) an FCA investment firm as

defined by Article 4(1)(2AB) of the UK CRR. The UK Due Diligence Requirements may also apply to investments by certain consolidated affiliates, wherever established or located, of such CRR firms

(Such affiliates, together with all institutional investors, "**UK Affected Investors**" and, together with EU Affected Investors, the "**Affected Investors**").

Any person subject to the EU Due Diligence Requirements or the UK Due Diligence Requirements is required (among other things), prior to investing in a securitization, to verify certain matters, including that (a) certain credit-granting requirements are satisfied, (b) the originator, sponsor or original lender retains on an ongoing basis a material net economic interest in the securitization which, in any event, will not be less than 5%, in accordance with the EU Securitization Regulation or the UK Securitization Regulation (as applicable to the relevant Affected Investor), and discloses that risk retention, and (c) the originator, sponsor or securitization special purpose entity has, where applicable, made available information in accordance with the EU Securitization Regulation or the UK Securitization Regulation (as applicable).

***If the servicer does not maintain control of the receivables evidenced by electronic contracts, the issuing entity may not have a perfected security interest in those receivables.***

As described in "*The Sponsor, Originator, Seller, Administrator and Servicer—Electronic Contracts and Electronic Contracting*" in this prospectus, some receivables are originated electronically by BMW FS and BMW Bank and stored by BMW FS, as servicer, in its electronic vault, and may, in the future, be stored on behalf of BMW FS by one or more third-party vaulting service providers. BMW FS' electronic vaulting system recognizes, and any third-party vaulting system that it may utilize will recognize, BMW FS as the party having control of the receivables originated electronically by BMW FS and BMW Bank, and BMW FS, as servicer, will maintain control of those receivables on behalf of BMW FS, BMW Bank and their respective assigns. BMW FS' electronic vaulting system is designed and any third-party vaulting system that it may utilize will be designed to enable each of BMW FS and BMW Bank to perfect its security interest in the receivables evidenced by electronic contracts by satisfying the Uniform Commercial Code's requirements for "control" of electronic chattel paper. For a description of these requirements, *see* "*Description of the Transfer and Servicing Agreements—Maintenance and Safekeeping of the Receivables*" in this prospectus.

BMW FS, BMW Bank and the depositor will represent that BMW FS, as servicer, has "control" (within the meaning of the applicable UCC) in each receivable that is evidenced by electronic contracts. However, it is possible that another person could acquire an interest in an electronic contract that is superior to BMW FS' or BMW Bank's interest (and accordingly the issuing entity's interest). This could occur if BMW FS ceases to have "control" over an electronic contract and another party purchases that electronic contract (without knowledge that such purchase violates BMW FS', BMW Bank's or their respective assigns' rights, as applicable, in the electronic contract) and obtains "control" over the electronic contract. BMW FS also could lose control over an electronic contract if through fraud, forgery, negligence or error, or as a result of a computer virus or a failure of or weakness in its electronic vaulting system or in the electronic vaulting system of any third-party vaulting service providers, a person other than BMW FS were able to modify or duplicate the authoritative copy of the contract.

Although each of BMW FS and BMW Bank will perfect its assignment of its security interest in the electronic contracts to the issuing entity by filing financing statements, if the interests in the receivables that BMW FS or BMW Bank acquired from the originating dealer were not perfected by control, the priority of the issuing entity's security interest in the receivables could be affected. The issuing entity's interest in the receivables could be junior to another party with a perfected security interest in the inventory of the originating dealer or to judgment creditors who obtain a lien on the receivables or to a bankruptcy trustee of a dealer that becomes a debtor in bankruptcy.

### Sale and Assignment of Receivables

On or prior to the Closing Date each of BMW FS and BMW Bank will sell and assign to the Depositor, without recourse, pursuant to the Receivables Purchase Agreement and the Bank Receivables Purchase Agreement, respectively, its entire interest in the Receivables, including the security interests in the related financed vehicles. On the Closing Date, the Depositor will transfer and assign to the Issuing Entity, without recourse, pursuant to the Sale and Servicing Agreement, its entire interest in the Receivables, including its security interests in the related financed vehicles. Each Receivable will be identified in a schedule appearing as an exhibit to the Sale and Servicing Agreement, but the existence and characteristics of the Receivables will not be verified by the Indenture Trustee. The Issuing Entity will, concurrently with the transfer and assignment, execute and deliver the Notes and the Certificates. The net proceeds received from the sale of the Notes and the Certificates will be applied to the purchase of the Receivables from the Depositor and to make any required initial deposit into the Reserve Account.

The Servicer will maintain control of all electronic chattel paper evidencing a Receivable. To assure uniform quality in servicing both the Receivables and the servicer's own portfolio of motor vehicle retail installment, as well as to facilitate servicing and reduce administrative costs, the documents evidencing the Receivables will not be physically segregated from other contracts of the servicer, or those which the servicer services for others, or marked to reflect the transfer to the Issuing Entity as long as BMW FS is servicing the Receivables. However, the Uniform Commercial Code (as in effect in the applicable jurisdiction (the "**UCC**")) financing statements reflecting the sale and assignment of the Receivables by BMW FS or BMW Bank to the Depositor and by the Depositor to the Issuing Entity, and the assignment by the Issuing Entity to the Indenture Trustee, as applicable, will be filed, and the respective accounting records and computer files of the Depositor, BMW FS and BMW Bank will reflect that sale and assignment. The Depositor, or the Servicer on behalf of the Depositor, will be responsible for maintaining such perfected security interest through the filing of continuation statements or amended financing statements, as applicable. Because the Receivables will remain in the Servicer's possession and will not be stamped or otherwise marked to reflect the assignment to the Indenture Trustee, if a subsequent purchaser were able to take physical possession of the Receivables without knowledge of the assignment, the Issuing Entity's interest in the Receivables could be defeated. In addition, in some cases, the Indenture Trustee's security interest in collections that have been received by the Servicer but not yet remitted to the Collection Account could be defeated.

*Perfection.* Pursuant to the Receivables Purchase Agreement and the Bank Receivables Purchase Agreement, BMW FS and BMW Bank, respectively, will sell and assign its security interest in the financed vehicles to the Depositor and, with respect to the Issuing Entity, pursuant to the Sale and Servicing Agreement, the Depositor will assign its security interest in the financed vehicles to the Issuing Entity and, if applicable, the Issuing Entity will assign its security interest to the Indenture Trustee. However, because of the administrative burden and expense, none of BMW FS, BMW Bank, the Depositor, the Owner Trustee or the Indenture Trustee will amend any certificate of title to identify the Issuing Entity as the new secured party on that certificate of title relating to a financed vehicle and accordingly BMW FS or BMW Bank will continue to be named as the secured party. As a result and as discussed below, the security interest of the Issuing Entity could be deemed to be unperfected. However, UCC financing statements with respect to the transfer to the Depositor of BMW FS' and BMW Bank's security interest in the financed vehicles and the transfer to the Issuing Entity of the Depositor's security interest in the financed vehicles and, if applicable, the pledge to the Indenture Trustee of the Issuing Entity's security interest in the financed vehicles will be filed. In addition, the Servicer will continue to hold any certificates of title relating to the financed vehicles in its possession as custodian for the Issuing Entity pursuant to the Sale and Servicing Agreement.

In most states, an assignment of contracts and interest in motor vehicles such as that under the Receivables Purchase Agreement, the Bank Receivables Purchase Agreement or the Sale and Servicing Agreement is an effective conveyance of a security interest without amendment of any lien noted on a motor vehicle's certificate of title, and the assignee succeeds to the assignor's rights as secured party. Although re-registration of the motor vehicle is not necessary to convey a perfected security interest in the financed vehicles to the Issuing Entity, the security interest of the Issuing Entity in the vehicle could be defeated through fraud or negligence because the Issuing Entity will not be listed as lienholder on the certificates of title. In those states, in the absence of fraud or forgery by the motor vehicle owner or the Servicer or administrative error by state or local agencies, the notation of BMW FS' or BMW Bank's, as applicable, lien on the certificates of title will be sufficient to protect the Issuing Entity against the rights of subsequent purchasers of a financed vehicle or subsequent lenders who take a security interest in a financed vehicle. In the Receivables Purchase Agreement and the Bank Receivables Purchase Agreement, BMW FS and BMW Bank, respectively, will represent and warrant, and in the Sale and Servicing Agreement, the Depositor will represent and warrant, that it has taken all action necessary to obtain a perfected security interest in each financed vehicle. If there are any financed vehicles as to which BMW FS or BMW Bank failed to obtain and assign to the Depositor a perfected security interest, the security interest of the Depositor would be subordinate to, among others, subsequent purchasers of the financed vehicles and holders of perfected security interests in the financed vehicles. However, to the extent that failure has a material and adverse effect on the interests of the Issuing Entity or the Noteholders in the related Receivable and such breach is not timely cured, it would constitute a breach of the representations and warranties of BMW FS or BMW Bank under the Receivables Purchase Agreement or the Bank Receivables Purchase Agreement, as applicable. Accordingly, pursuant to the Receivables Purchase Agreement or the Bank Receivables Purchase Agreement, BMW FS or BMW Bank would be required to repurchase the related Receivable unless the breach was cured. Pursuant to the Sale and Servicing Agreement, the Depositor will assign to the Issuing Entity its right to cause BMW FS or BMW Bank

to repurchase that Receivable under the Receivables Purchase Agreement or the Bank Receivables Purchase Agreement.

Each of BMW FS and BMW Bank may also periodically perform reviews of its lending policies and analyses of both dealer-specific and portfolio-wide loan pricing data for potential disparities resulting from dealer markup and compensation policies. Depending upon the results of these reviews and analyses or any regulatory agency actions, BMW FS and BMW Bank may consider taking, or may be required to take, corrective actions, which could include reductions to the interest rates on the applicable Receivables. Corrective actions could be taken by BMW FS and BMW Bank without the occurrence of any violation of law. If BMW FS, as Servicer, were to voluntarily reduce the interest rate on any Receivable, it may be required under the Sale and Servicing Agreement to repurchase the affected Receivable.

BMW FS and BMW Bank will represent and warrant under the Receivables Purchase Agreement and the Bank Receivables Purchase Agreement, respectively, that each Receivable complies with all requirements of law in all material respects at the time it was originated. Accordingly, if an Obligor has a claim against the Issuing Entity for violation of any law and that claim materially and adversely affects the interests of the Issuing Entity or the Noteholders in a Receivable, that violation would constitute a breach of the representations and warranties of BMW FS or BMW Bank, as applicable, under the Receivables Purchase Agreement and the Bank Receivables Purchase Agreement and would create an obligation of BMW FS or BMW Bank, as applicable, to repurchase such Receivable unless the breach is cured.

https://www.sec.gov/Archives/edgar/data/1921318/000092963822000909/bmw2022-a_424b5.htm

https://www.sec.gov/edgar/browse/?CIK=1921318

SALE AND SERVICING AGREEMENT
among

BMW VEHICLE OWNER TRUST 2022-A,
as Issuer,

BMW FS SECURITIES LLC,
as Depositor,

BMW FINANCIAL SERVICES NA, LLC,
as Sponsor, Servicer, Administrator and Custodian,

U.S. BANK TRUST COMPANY, NATIONAL ASSOCIATION,
as Indenture Trustee,
and

U.S. BANK NATIONAL ASSOCIATION,
as Securities Intermediary
Dated as of May 18, 2022

ARTICLE II.
CONVEYANCE OF RECEIVABLES

SECTION 2.01.     Conveyance of Receivables.

In consideration of the Issuer's delivery to or upon the order of the Depositor of the Notes and the Certificates, the Depositor does hereby sell, transfer, assign, set over and otherwise convey to the Issuer, without recourse (subject to the obligations of the Depositor set forth herein), all right, title and interest of the Depositor in and to the following assets and property, whether now owned or existing or hereafter acquired or arising:

(i)        the Receivables and all moneys received thereon after the close of business on the Cutoff Date;

(ii)       the security interests in the Financed Vehicles and any accessions thereto granted by Obligors pursuant to the Receivables and any other interest of the Depositor in such Financed Vehicles;

(iii)      any Liquidation Proceeds and Recoveries and any other proceeds with respect to the Receivables from claims on any theft, physical damage, credit life or disability insurance policies covering the Financed Vehicles or the related Obligors, including any vendor's single interest or other collateral protection insurance policy;

Page | 18

(iv)     any property that shall have secured a Receivable and shall have been acquired by or on behalf of the Depositor, a Seller, the Servicer or the Trust;

(v)     all documents and other items contained in the Receivable Files;

(vi)     all of the Depositor's rights (but not its obligations) under the Receivables Purchase Agreements;

(vii)     the Trust Accounts and all funds on deposit from time to time in the Trust Accounts and the Certificate Distribution Account and in all investments therein and proceeds thereof (including all Investment Earnings thereon);

(viii)     all proceeds from any Receivable repurchased by a Dealer pursuant to a Dealer Agreement; and

(ix)     the proceeds of any and all of the foregoing (collectively, with the assets listed in clauses (i) through (viii) above, the "Conveyed Assets")

It is the intention of the Depositor that the transfer and assignment contemplated by this Agreement shall constitute a sale of the Receivables and other related property from the Depositor to the Trust and the beneficial interest in and title to the Receivables and the related property shall not be part of the Depositor's estate in the event of the filing of a bankruptcy petition by or against the Depositor under any bankruptcy law. In the event that, notwithstanding the intent of the Depositor, the transfer and assignment contemplated hereby is held not to be a sale, this Agreement shall constitute a security agreement under applicable law, and the Depositor hereby grants to the Issuer a first priority perfected security interest in all of the Depositor's right, title and interest in and to the Conveyed Assets, whether now owned or existing or hereafter acquired or arising, and under all accounts, money, chattel paper, securities, instruments, documents, deposit accounts, certificates of deposit, letters of credit, advices of credit, banker's acceptances, uncertificated securities, general intangibles, contract rights, goods and other property consisting of, arising from or relating to such Conveyed Assets, as security for the Depositor's obligations hereunder.

https://www.sec.gov/Archives/edgar/data/1136586/000092963822000937/exhibit10-3.htm

https://www.sec.gov/edgar/browse/?CIK=1136586

# SECTION 3:    FORECLOSURE

**Recorded Events on the Loan Including Foreclosure Issues and Securitization**

| Recorded Chain of Contract Possession | | Chain of Note Possession | |
|---|---|---|---|
| **Date** | **Original Contract** | **Date** | **Note Holder** |
| May 27, 2021<br>Official Records,<br>DuPage County<br>Illinois | EDICOTT IVY III<br>(BUYER)<br><br>ZEIGLER BMW OF ORLAND PARK<br>(Lender) | May 27, 2021 | ZEIGLER BMW OF ORLAND PARK<br>(Lender)<br><br>Principal Amount:<br>$104,005.27 |
| Official Records,<br>DuPage County<br>Illinois | **No recorded assignment available for review as mentioned in the above Prospectus.**<br>Financing statements reflecting the sale and assignment of the Receivables by BMW FS or BMW Bank to the Depositor and by the Depositor to the Issuing Entity, and the assignment by the Issuing Entity to the Indenture Trustee, as applicable, will be filed, and the respective accounting records and computer files of the Depositor, BMW FS and BMW Bank will reflect that sale and assignment. | March 31, 2022 | BMW VEHICLE OWNER TRUST 2022-A<br>Issuing Entity<br><br>Principal Amount:<br>$104,005.27 |

*Note: The above analysis covers primary active loan.*
*Documents provided by the BUYER*

# REPORT SUMMARY

**Agreement:**

- On May 27, 2021, EDICOTT IVY III executed a negotiable promissory note and a security interest in the form of an Contract in the amount of $104,005.27. This document was filed in the Official Records of DuPage County, Illinois. *The original lender of the Agreement/Contract is ZEIGLER BMW OF ORLAND PARK.*

**Securitization (The Note):**

- The NOTE was sold, transferred, assigned and securitized into the **BMW VEHICLE OWNER TRUST 2022-A** with a Closing Date of on MAY 18, 2022.

**No recorded Assignment of Agreement:**

- No recorded Assignment of Agreement in the Official Records, DuPage County, Illinois. Assignments must be filed and recorded before a proper repossession/foreclosure and any attempt to recover the Goods as described

## BLOOMBERG SEARCH SECTION

On **September 08. 2023**, I researched the Bloomberg online Database at the request of **EDICOTT IVY III** whose Description of Goods is noted herein above. The Agreement search was conducted using Bloomberg's terminal based on the Original Amount: **$104,005.27**; Origination Date: **May 27, 2021**; Description of Goods: **NEW 2021 BMW M850X1 GC VIN# WBAGV8C00MCF18883**; Examiner did, however, locate a prospective securitization that matches the characteristics for the possibility of securitizing this Agreement. This trust is described as the BMW VEHICLE OWNER TRUST 2022-A. The Seller and Servicer is BMW Financial Services NA, LLC.

Other possibilities for the location of this instrument are in the portfolio of loans held in inventory or for sale by ZEIGLER BMW OF ORLAND PARK. While the ZEIGLER BMW OF ORLAND PARK originated the instrument, they or a subsequent purchaser may not have recorded their interest in the instrument or to a buyer pursuant to the requirements of Illinois Commercial Law, the Statute of Frauds and any equivalents of the Illinois Uniform Commercial Code.

ZEIGLER BMW OF ORLAND PARK or other affiliates may also have placed the instrument into a private placement securitization exempt from SEC or other public reporting requirements and which was not reported to Bloomberg, LP; or for which ZEIGLER BMW OF ORLAND PARK or other affiliates used as secured borrowings to raise additional funds.

**Identification of exact ZEIGLER BMW OF ORLAND PARK or other portfolio may be gotten through a Qualified Written Request, a Request for Information under Regulations X or Z, voluntary lender disclosure, a Freedom of Information Act request as applicable, or discovery through litigation.**

(Bloomberg Screenshots are shown below:)

## SECURITY DESCRIPTION FROM BLOOMBERG
### Bond Summary



**SECURITY DESCRIPTION**
**Group Summary**



## SECURITY DESCRIPTION
**Original Collateral Characteristics and Restrictions.**



## RATINGS HISTORY
### Shows Issue Date and Maturity Date



## STRUCTURED FINANCE NOTES
### Shows the list to the Securitization Participants

BMWOT 2022-A A2A 99.57936 /99.5913    Yield 5.645 5.624        BVAL
As of 07 Sep Prepay 1.3455 WAL 0.14 Collateral 100.0% AUTO 2.6%
Documents •                                                                        Structured Finance Notes

BMWOT 2022-A BMW VEHICLE OWNER TRUST
Underwriter
Lead Manager        BNP Paribas
Lead Manager        JP Morgan Securities LLC
Lead Manager        RBC Capital Markets

Original Servicers                          Trustee
Master    BMW Financial Services NA, Inc    US Bank National Association

                                            Paying Agent
                                            US Bank National Association

Originator/Seller        Deal%              Asset Manager
BMW Financial Services   100

                                            Swap Counterparty

Insurer                  Deal%

51 2 9777 8600 Brazil 5511 2395 9000 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852
4565 8900        Singapore 65 6212 1000        U.S. 1 212 318 2000        Copyright 2023 Bloomberg F
                                        SN 455411 EDT  GMT-4:00 G692-2139-174 08-Sep-2023 11:10:36

**YIELD TABLE**
**Structure Paydown**



## VIEW ALL CLASSES
**This screens shows 5 Investment Classes into which the Trust was split**





**CONCLUSION**

**CHAIN OF TITLE**

EDICOTT IVY III — BUYER

AGREEMENT / CONTRACT → TITLE COMPANY/ ESCROW → DUPAGE COUNTY ILLINOIS — MAINTAINS ASSIGNMENT HISTORY

MONTHLY PAYMENTS

SELLER ASSIGNED ITS INTEREST

CONTRACT WAS SOLD & TRANSFERRED

ZEIGLER BMW OF ORLAND PARK — SELLER/ ORIGINATOR

BMW FINANCIAL SERVICES NA, LLC — MASTER SERVICER — Services individual loans; Aggregates Collection; Performs Duties under Trust's Pooling & Servicing Agreement

BMW FINANCIAL SERVICES NA, LLC — SELLER — Purchases loans from originator; forms pool

BMW FS SECURITIES LLC — DEPOSITOR — Creates Issuing Entity

CERTIFICATES

BNP PARIBAS JP MORGAN SECURITIES RBC CAPITAL — UNDERWRITERS — SELLS CERTIFICATES TO INVESTORS; COLLECTS OFFERING PROCEEDS

CERTIFICATES

OFFERING PROCEEDS

CERTIFICATES

BMW VEHICLE OWNER TRUST 2022-A — TRUST FUND – ISSUING ENTITY — Holds pool of loans; issues certificates

U.S. BANK NATIONAL ASSOCIATION — TRUSTEE FOR THE TRUST — Represents Investors' Interests; Calculates Cash Flows; Remits Net Revenues — UNDERLYING CUSTODIAN — Document Custody

INVESTORS — Purchase Mortgage Backed Securities as defined in Certificates

RETURN ON INVESTMENTS

**ARROW LEGEND**

PURPLE – AGREEMENT DOCUMENTS
BLUE – SECURITIES CERTIFICATES
RED – INVESTOR FUNDS
GREEN – BUYER FUNDS

(The selling, assigning or transferring of the Agreement is not to be confused with the selling of Servicing Rights, which is simply the right to collect payment on the Agreement, and keep a small portion of the payment for Servicing Fees. Usually, when a Beneficiary states that their Agreement was sold, they are referring to Servicing Rights.)

Securitizing an Agreement

Securitization is the process of selling credit instrument to the public or private investors. it is a method with many issues to be considered. The methodology of securitization generally followed these steps:

- A firm would approach other entities about issuing a "Series of Bonds" for sale to investors and would come to an agreement. In other words, the firm "pre-sold" the bonds.

- The Wall Street firm would approach a bank and usually offer them a warehouse Line of Credit. The Warehouse Line would be covered by restrictions resulting from the initial Pooling & Servicing Agreement Guidelines and Purchase Agreement. These documents outlined the procedures for the creation of the Agreement and the administering of the Agreement prior to, and after, the sale of the Agreement to Wall Street.

- The Bank, with the guidelines, essentially went out and found "buyers" for the agreement, people who fit the general characteristics of the Purchase Agreement. (Guidelines were very general and most people could qualify." The Bank would execute the Agreement, collecting payments until there were enough Agreement funded to sell to the Wall Street firm who could then issue the bonds.

- Once the necessary Agreement were funded, the Originator would then sell the Agreement to the "Sponsor", usually either a subsidiary of the Wall Street firm, or a specially created Corporation or Special Purpose Vehicle (SPV) of the bank. At this point, the Agreement are separated into "tranches", where they will be eventually turned into bonds.

- Next, the Agreement were "sold" or most usually assigned" to the "Depositor." This was a "Special Purpose Vehicle" designed with one purpose in mind. That was to create a "bankruptcy remote vehicle" where the Bank or other entities are protected from what might happen to the Agreement, and/or the Agreement are "protected" from the Bank. The "Depositor" would be, once again, created by the Wall Street firm or the Agreement.

- Then the "Depositor" would assign the instruments into the Issuing Entity, which is another entity created solely for the purpose of selling the bonds.

Finally, the bonds would be sold, with a Trustee appointed to ensure that the bondholders received their monthly payments.

ξ ZEIGLER BMW OF ORLAND PARK was a "correspondent lender" that originated mortgage loans. These loans, in turn, were sold and transferred into a "federally-approved securitization" trust named the BMW VEHICLE OWNER TRUST 2022-A.

ξ The agreement was securitized into the BMW VEHICLE OWNER TRUST 2022-A.

ξ The written agreement that created the BMW VEHICLE OWNER TRUST 2022-A is a "Prospectus Agreement" (PA), and is a matter of public record, available on the website of the Securities Exchange Commission. The Trust is also described in a "Prospectus Supplement," also available on the SEC website. The Trust by its terms set a "CLOSING DATE" MAY 18, 2022. The Agreement in this case became trust property in compliance with the requirement set forth in the PA. The Trust agreement is filed under oath with the Securities and Exchange Commission. The acquisition of the assets of the subject Trust and the PA are governed under the law.

ξ The loan was originally made to ZEIGLER BMW OF ORLAND PARK and was sold and transferred to BMW VEHICLE OWNER TRUST 2022-A. There is no record of Assignments to either the Sponsor or Depositor as required by the Prospectus Agreement.

## AFFIDAVIT OF FACTS

**STATE OF CALIFORNIA** )
) sv.: **AFFIDAVIT**
**COUNTY OF LOS ANGELES** )

**RE: EDICOTT IVY III**

I, ARTHUR A BERNARDO, a citizen of the United States and the State of California over the age of 21 years, and declare as follows, under penalty of perjury that the facts stated herein are true, correct and complete. The undersigned believes them to be true and admissible as evidence in a court of law, and if called upon as a witness, will testify as stated herein:

1. I have utilized the Bloomberg Professional Service for more than 10 years, and I was Certified in (2012) by Bloomberg, LP through Ambassador Program (40 hours) CFLA (AMS) I have completed the required training and engaged in continuing education with Bloomberg – both online and at Bloomberg live training events, to stay abreast with Bloomberg's latest progress and developments. I have the requisite knowledge and the trained ability to navigate and perform effective searches on the Bloomberg terminal.

2. I am an Expert Analyst on Auto Agreement Backed Securities Data and my qualifications, expertise and experience provide me with the background necessary to certify the audit services and to be qualified as an expert in this field. I have led instruction and completed more than 1,000 hours of live instruction for students on the topic of Auto Agreement/Asset-Backed securities and Auditing. I have supervised the production of more than ten thousand (10,000) Securitized Analysis Reports in Auto Agreement investigation in 50 states, the District of Columbia, Puerto Rico, the United Kingdom, Ireland, South Africa, and Australia.

3. I have the trained skills and qualifications to navigate and perform searches on the Bloomberg terminal in regards to the automated tracking and determination of Agreement and related documents and information.

4. The contents of this report are factual, but it is provided for information purposes only and is not to be construed as "legal advice."[1]

---

[1] The client has been strongly advised to seek legal consultation from a competent legal professional in connection with the contents of this report and how to properly use it.

5. On September 08. 2023, I researched the Bloomberg online Database at the request of EDICOTT IVY III whose description of goods as New 2021 BMW M850X1 GC VIN# WBAGV8C00MCF18883.

6. Based on the information I was provided, EDICOTT IVY III signed an Agreement in favor of ZEIGLER BMW OF ORLAND PARK on May 27, 2021.

7. Agreement was Securitized into BMW VEHICLE OWNER TRUST 2022-A with the Master Servicer being BMW FINANCIAL SERVICES NA, LLC; the Sponsor / Seller being BMW FINANCIAL SERVICES NA, LLC and the Depositor being BMW FS SECURITIES LLC.

8. The basis of the identification of the Agreement in BMW VEHICLE OWNER TRUST 2022-A was made from the following factors/information that correspond with EDICOTT IVY III'S loan documents provided: Original Amount: $104,005.27; Origination Date: May 27, 2021; Location of Goods: Illinois.

By:

_____

ARTHUR A BERNARDO
Certified Securitization Auditor / Bloomberg Specialist

A Notary public or other completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**STATE OF CALIFORNIA** )
) sv.: **AFFIDAVIT**
**COUNTY OF LOS ANGELES** )

On _____, 2023 before me, _____
(Notary Public)

personally appeared **ARTHUR A BERNARDO**, who proved to me on the basis of satisfactory evidence to be the man whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument under the penalty of perjury.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

My commission Expires _____

Page | 35

**Exhibit I**

## COPY OF AGREEMENT PROVIDED BY THE BUYER

### MOTOR VEHICLE RETAIL INSTALLMENT CONTRACT - Illinois
### BMW Financial Services NA, LLC

DEAL#: 44136
CUST#: 111309

**1. PARTIES**

| BUYER(S) | SELLER |
|---|---|
| Name EDICOTT IVY III | Name ZEIGLER BMW OF ORLAND PARK |
| Address (include County and Zip Code) | Address 11030 West 159th Street |
| 1601 BAILEY RD | ORLAND PARK |
| NAPERVILLE IL 60505 | IL |
| KANE | 60467 |
| Billing Address (if different) | |
| N/A | DATE OF CONTRACT 05/27/2021 |

This Motor Vehicle Retail Installment Contract ("Contract") is entered into between the buyer(s) ("Buyer") named above. Unless otherwise specified or required by context, "I", "me" and "my" refer to the Buyer and "you" and "your" refer to the Seller or Seller's assignee. "Vehicle" refers to the vehicle described below. I promise to pay the Seller the Amount Financed plus the Finance Charge calculated at the Annual Percentage Rate shown below according to the Payments Schedule shown below. I acknowledge that I am purchasing the Vehicle from the Seller on an installment basis and accept the Vehicle in its present condition, including all its equipment, parts and accessories.

**2. VEHICLE**

| ☒ New ☐ Used | Year | Make | Model | Vehicle Identification Number | Odometer Reading | ☒ Personal Use ☐ Business Use ☐ Agricultural Use |
|---|---|---|---|---|---|---|
| | 2021 | BMW | M850XI GC | WBAGV8C00MCF18883 | 1880 | |
| ☐ CD Player | ☐ | N/A | (specify) | ☐ N/A (specify) | ☐ N/A | (specify) |

**3. CREDIT DISCLOSURES**

e=estimate

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | Amount Financed The amount of credit provided to me or on my behalf. | Total of Payments The amount I will have paid after I have made all payments as scheduled. | Total Sale Price The total cost of my purchase on credit, including my down payment of $ 18002.81 |
|---|---|---|---|---|
| 5.90 % | $ 20044.97 e | $ 104005.27 | $ 124050.24 e | $ 142053.05 e |

**PAYMENT SCHEDULE**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 1722.92 | Monthly, beginning 07/11/2021 |
| 1 Balloon Payment (if applicable) N/A | N/A | N/A |

**SECURITY.** I am giving a security interest in the Vehicle.
**LATE CHARGE.** If all or any portion of a payment is more than 10 days late, I will be charged (a) $10 on any scheduled payment of $200 or less or (b) 5% of any scheduled payment of more than $200.
**PREPAYMENT.** If I pay off early, I will not have to pay a penalty.

Please read all pages of this Contract for additional information on security interests, nonpayment, default, and the right to require repayment in full before the scheduled maturity date.

**ILLINOIS NOTICE REGARDING USED VEHICLES**

The following applies only if the Vehicle is a used vehicle and the Vehicle is not an antique vehicle, as defined in the Illinois Vehicle Code, or a collector motor vehicle.

**Illinois law requires that this Vehicle will be free of a defect in a power train component for 15 days or 500 miles after delivery, whichever is earlier, except with regard to particular defects disclosed on the first page of this agreement. "Power train component" means the engine block, head, all internal engine parts, oil pan and gaskets, water pump, intake manifold, transmission, and all internal transmission parts, torque converter, drive shaft, universal joints, rear axle and all rear axle internal parts, and rear wheel bearings. You (the consumer) will have to pay up to $100 for each of the first 2 repairs if the warranty is violated.**

**Attention consumer: sign here only if the Seller has told you that this Vehicle has the following problem or problems and you agree to buy the Vehicle on those terms:**

1. N/A

X _____  N/A _____
Buyer's Signature                        Date

2. N/A

X _____  N/A _____
Buyer's Signature                        Date

3. N/A

1314L (03/20) (IL)

78748*1*ZBO-FI

05/26/2021  10:03 pm
1 of 6

## 4. BALLOON PAYMENT

BALLOON PAYMENT. If a Balloon Payment is noted above in Section 3, this Section 4 and Section 10 below apply. I understand that the scheduled Balloon Payment is substantially larger than each of the other scheduled payments. The due date and amount of the scheduled Balloon Payment are shown in the Payment Schedule in Section 3 above. If I choose and qualify for the Sale Option explained in Section 10 of this Contract, I agree that I may incur the following fees: (A) a Disposition Fee of $_____ N/A ; (B) Excess Mileage Fees of N/A ¢ for each mile driven in excess of N/A miles per year; and (C) the Excess Wear and Use Charge explained in Section 10.

## 5. ITEMIZATION OF THE AMOUNT FINANCED

**A. CASH PRICE**

| | |
|---|---|
| (1) Cash Price of Vehicle and Accessories | $ 112865.00 |
| (2) Sales Tax | + 8513.48 |
| (3) Other (Describe) SELLER/DOC | + 303.60 |
| (4) Other (Describe) N/A | + N/A |
| (5) Other (Describe) N/A | + N/A |
| (6) Total Cash Price | = 121682.08 |

**B. DOWN PAYMENT**

(1) Net Value of Trade-In
  (Gross Allowance $ 34500.00 Payoff $ 31997.19)
  (Year 2019 Make DODGE Model DURANGO) $ 2502.81

| | |
|---|---|
| (2) Cash Down Payment | + 12500.00 |
| (3) Manufacturer's Rebate Assigned to Seller | + 3000.00 |
| (4) Other (Describe) N/A | + N/A |
| (5) Total Down Payment | = 18002.81 |

**C. UNPAID BALANCE OF CASH PRICE**
(A(6) minus B(5)) $ 103679.27

*Seller and/or Seller's affiliates may retain or receive a portion of these amounts.

THE SELLER MAY ASSIGN THIS CONTRACT AND RECEIVE A FEE OR OTHER CONSIDERATION FOR FACILITATING THIS FINANCING.

**D. AMOUNTS PAID TO OTHERS ON MY BEHALF**

(1) To Public Officials:

| | |
|---|---|
| (a) License, Title, and Registration Fees | $ 326.00 |
| (b) Other Official Fees (Describe) N/A | + N/A |

(2) To Insurance Companies For:

| | |
|---|---|
| (a) Credit Life/Disability Insurance | + N/A * |
| (b) Other Insurance (Describe) N/A | + N/A * |

(3) Other Charges:

| | |
|---|---|
| (a) To N/A For N/A | + 0.00 * |
| (b) To N/A For N/A | + N/A * |
| (c) To N/A For N/A | + N/A * |
| (d) To N/A For N/A | + N/A * |
| (e) To N/A For N/A | + N/A * |
| (f) To N/A For N/A | + N/A * |
| (g) To N/A For N/A | + N/A * |
| (h) To N/A For N/A | + N/A * |
| (4) Total Amounts Paid to Others on My Behalf | = 326.00 |

**E. AMOUNT FINANCED** (C plus D(4)) $ 104005.27

## 6. SERVICE CONTRACT

A service contract is not required to obtain credit and will not be provided unless I sign and agree to pay the cost. The service contract issued by the Provider will describe the terms and conditions in further detail. By signing below, I agree to purchase the service contract for the term and cost indicated.

| | | | | |
|---|---|---|---|---|
| Provider: N/A | Cost: $ | N/A Term: N/A | months or N/A | miles, whichever occurs first. |
| Provider: N/A | Cost: $ | N/A Term: N/A | months or N/A | miles, whichever occurs first. |
| Provider: N/A | Cost: $ | N/A Term: N/A | months or N/A | miles, whichever occurs first. |
| Provider: N/A | Cost: $ | N/A Term: N/A | months or N/A | miles, whichever occurs first. |
| Provider: N/A | Cost: $ | N/A Term: N/A | months or N/A | miles, whichever occurs first. |

X _____ N/A _____          X _____ N/A _____
Buyer's Signature              Buyer's Signature

## 7. CREDIT INSURANCE

Credit life or credit disability insurance is not required to obtain credit and will not be provided unless I sign and agree to pay the premium. My decision to obtain (or not obtain) credit life insurance is not a factor in granting credit and does not affect your credit decision. I may also use alternative coverage or buy insurance elsewhere. The policies or certificates issued by the insurer will describe the terms and conditions in further detail. By signing below, I agree to pay for the following insurance for the terms and premiums indicated.

☐ I want Credit Life Insurance (One Buyer only)    Term N/A mos. Premium $ N/A Insured Name: N/A

☐ I want Joint Credit Life Insurance    Term N/A mos. Premium $ N/A Insured Name: N/A

Insured Name: N/A

☐ I want Credit Disability Insurance (One Buyer only)    Term N/A mos. Premium $ N/A Insured Name: N/A

Name of Insurer(s): N/A

X _____ N/A _____          X _____ N/A _____
Buyer's Signature    Date          Buyer's Signature    Date

3314L (01/20) (IL)

78748*1*ZBO-FI

05/26/2021 10:03 pm

2 of 6

## Contract Agreement is Assigned to BMW Financial Services NA, LLC

in Section 1 of this Contract and applicable federal law.

Notwithstanding any other provision for notice contained in this Contract, any arbitration Claim or other notice provided under the rules of the arbitration administrator will be given to you at the following address: If my Claim is against the Seller, I agree that notice of my Claim will be given to the Seller at the address specified in Section 1 of this Contract. If my Claim is against the Assignee (designated in Section 20 of this Contract), I agree that notice of my Claim will be given at 5550 Britton Parkway, Hilliard, OH 43026. If my Claim is against both the Seller and the Assignee, I agree that both the Seller and the Assignee will be notified of my Claim at the addresses indicated herein.

### 21. OTHER NOTICES TO BUYER

**DOCUMENTARY FEE.** A DOCUMENTARY FEE IS NOT AN OFFICIAL FEE. A DOCUMENTARY FEE IS NOT REQUIRED BY LAW, BUT MAY BE CHARGED TO BUYERS FOR HANDLING DOCUMENTS AND PERFORMING SERVICES RELATED TO CLOSING OF A SALE. THE BASE DOCUMENTARY FEE BEGINNING JANUARY 1, 2020, WAS $300. THE MAXIMUM AMOUNT THAT MAY BE CHARGED FOR A DOCUMENTARY FEE IS THE BASE DOCUMENTARY FEE OF $300 WHICH SHALL BE SUBJECT TO AN ANNUAL RATE ADJUSTMENT EQUAL TO THE PERCENTAGE OF CHANGE IN THE BUREAU OF LABOR STATISTICS CONSUMER PRICE INDEX. THIS NOTICE IS REQUIRED BY LAW.

### NOTICE OF POSSIBLE REFUND OF CREDIT LIFE OR DISABILITY INSURANCE PREMIUM

1. IF YOU HAVE PURCHASED EITHER CREDIT LIFE OR CREDIT DISABILITY INSURANCE, OR BOTH, TO GUARANTEE PAYMENTS BEING MADE IN CASE OF YOUR DEATH OR DISABILITY, ON YOUR VEHICLE PURCHASED UNDER AN INSTALLMENT SALES CONTRACT, YOU MAY BE ENTITLED TO A PARTIAL REFUND OF YOUR PREMIUM IF YOU PAY OFF YOUR INSTALLMENT LOAN EARLY.

2. IN CASE OF EARLY COMPLETE PAYMENT OF YOUR LOAN, YOU SHOULD CONTACT THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE TO SEE IF A REFUND IS DUE. IF YOUR VEHICLE DEALER FINANCED YOUR LOAN, THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE IS YOUR VEHICLE DEALER.

### 19. BUYER NOTICES AND CONTRACT SIGNATURES

**IMPORTANT: READ THE ADDITIONAL TERMS ON ALL PAGES BEFORE SIGNING BELOW.**

**Notice to the Buyer: 1. Do not sign this agreement before you read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the agreement you sign. 3. Under the law you have the right, among others, to pay in advance the full amount due and to obtain under certain conditions a partial refund of the finance charge.**

By signing below, I agree to all the terms of this Contract. I also acknowledge and agree to the Arbitration Clause in Section 18 of this Contract.

**I ACKNOWLEDGE RECEIPT OF A COMPLETELY FILLED-IN COPY OF THIS CONTRACT AT THE TIME OF SIGNING.**

#### RETAIL INSTALLMENT CONTRACT

Buyer's Signature: X

Co-Buyer's Signature: X **N/A**

Instruction: If the co-signer is the Buyer's parent, Buyer's spouse, a person listed on the certificate of title as an owner of the Vehicle, or will actually receive the Vehicle, sign above. Other co-signers sign on the Guarantor's Signature line.

Guarantor's Signature: X

I hereby guarantee the collection of the above described amount upon failure of the Seller named herein to collect said amount from the Buyer named herein.

### 20. SELLER SIGNATURE

The authorized signature of the Seller has the effect of: (1) acknowledging that no representations or warranties beyond those presented in this Contract have been made; (2) confirming that no written or oral representations have been made by or to the Buyer that can be used as a defense to this Contract; (3) accepting the terms and conditions of this Contract; (4) acknowledging verification of the existence of the insurance coverage required by this Contract with the Buyer's insurance agent; (5) assigning this Contract to BMW Bank of North America, a wholly owned subsidiary of BMW Financial Services NA, LLC (collectively, "Assignee"), 5550 Britton Parkway, Hilliard, Ohio 43026; and (6) acknowledging that the Center Agreement in place with Assignee governs this transaction. The Seller shall not be an agent of the Assignee for any purpose.

Authorized Signature: X

Title: **FIMANAGER**

Title information data source: Documents provided by the BUYER.

1. EDICOTT IVY III acquired an Agreement on May 27, 2021 in the amount of $104,005.27for a New 2021 BMW M850X1 GC VIN# WBAGV8C00MCF18883.

2. No Recorded Assignment made available for review at the time of this report. Examiner recommends immediate rescission of document for rightful Repossession/Foreclosure to proceed; and production and review of all purchase documents and then notarized Agreement endorsements among all relevant parties.

## AFFIDAVIT OF FACTS

**STATE OF CALIFORNIA**      )
                                ) sv.: **AFFIDAVIT**

**COUNTY OF LOS ANGELES**    )

### RE: EDICOTT IVY III

I, ARTHUR A BERNARDO, a citizen of the United States and the State of California over the age of 21 years, and declare as follows, under penalty of perjury that the facts stated herein are true, correct and complete. The undersigned believes them to be true and admissible as evidence in a court of law, and if called upon as a witness, will testify as stated herein:

1. I have utilized the Bloomberg Professional Service for more than 10 years, and I was Certified in (2012) by Bloomberg, LP through Ambassador Program (40 hours) CFLA (AMS) I have completed the required training and engaged in continuing education with Bloomberg – both online and at Bloomberg live training events, to stay abreast with Bloomberg's latest progress and developments. I have the requisite knowledge and the trained ability to navigate and perform effective searches on the Bloomberg terminal.

2. I am an Expert Analyst on Auto Agreement Backed Securities Data and my qualifications, expertise and experience provide me with the background necessary to certify the audit services and to be qualified as an expert in this field. I have led instruction and completed more than 1,000 hours of live instruction for students on the topic of Auto Agreement/Asset-Backed securities and Auditing. I have supervised the production of more than ten thousand (10,000) Securitized Analysis Reports in Auto Agreement investigation in 50 states, the District of Columbia, Puerto Rico, the United Kingdom, Ireland, South Africa, and Australia.

3. I have the trained skills and qualifications to navigate and perform searches on the Bloomberg terminal in regards to the automated tracking and determination of Agreement and related documents and information.

4. The contents of this report are factual, but it is provided for information purposes only and is not to be construed as "legal advice."[1]

---

[1]The client has been strongly advised to seek legal consultation from a competent legal professional in connection with the contents of this report and how to properly use it.

5. On September 08. 2023, I researched the Bloomberg online Database at the request of EDICOTT IVY III whose description of goods as New 2021 BMW M850X1 GC VIN# WBAGV8C00MCF18883.

6. Based on the information I was provided, EDICOTT IVY III signed an Agreement in favor of ZEIGLER BMW OF ORLAND PARK on May 27, 2021.

7. Agreement was Securitized into BMW VEHICLE OWNER TRUST 2022-A with the Master Servicer being BMW FINANCIAL SERVICES NA, LLC; the Sponsor / Seller being BMW FINANCIAL SERVICES NA, LLC and the Depositor being BMW FS SECURITIES LLC.

8. The basis of the identification of the Agreement in BMW VEHICLE OWNER TRUST 2022-A was made from the following factors/information that correspond with EDICOTT IVY III'S loan documents provided: Original Amount: $104,005.27; Origination Date: May 27, 2021; Location of Goods: Illinois.

By:

_____

ARTHUR A BERNARDO
Certified Securitization Auditor / Bloomberg Specialist

A Notary public or other completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**STATE OF CALIFORNIA** )
                              ) sv.: **AFFIDAVIT**

**COUNTY OF LOS ANGELES** )

On SEPTEMBER 11, 2023 before me, STEPHANIE GUERRERO
                                        (Notary Public)

personally appeared **ARTHUR A BERNARDO**, who proved to me on the basis of satisfactory evidence to be the man whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument under the penalty of perjury.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

STEPHANIE GUERRERO
Notary Public - California
Ventura County
Commission # 2329598
My Comm. Expires Jun 12, 2024

My commission Expires __JUNE 12, 2024__